# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1829

_____

Jacqueline L. Conners, individually and on behalf of all others similarly situated;
Rachel Hobbs, individually and on behalf of all others similarly situated; Blaire
Larson, individually and on behalf of all others similarly situated; Maria
Campanelli, individually and on behalf of others similarly situated; Katey Tiller,
individually and on behalf of all others similarly situated; Sarina Ellis, individually
and on behalf of others similarly situated; Cecilie Washburn, individually and on
behalf of all others similarly situated; Whitney Koch, individually and on behalf of
all others similarly situated; Lacie Morgan, individually and on behalf of all others
similarly situated

*Plaintiffs - Appellees*

v.

Gusano's Chicago Style Pizzeria, doing business as Kennedy's Pizzeria Inc.;
Catfish Pies Inc.; Crazy Pies Inc.; Fayetteville Pies Inc.; Gusano's Chicago Style
Pizzeria of Bella Vista Inc.

*Defendants - Appellants*

Hendrix Brands Inc.

*Defendant*

Pizza Profits Inc.; Show Me Pies Inc.; Ben Bisenthal; Clearwater Social Club Inc.,
doing business as Gusano's Chicago Style Pizzeria of Conway #1 Inc.; Three
Buddies Incorporated

*Defendants - Appellants*

Timothy Chappell

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2015
Filed: March 9, 2015

_____

Before RILEY, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

RILEY, Chief Judge.

After Jacqueline Conners filed this Fair Labor Standards Act (FLSA) collective action, see 29 U.S.C. § 216(b), against her former employer and a number of associated entities (collectively, Gusano's Pizza), several of these entities implemented a new arbitration policy applicable to their current employees, which required all employment-related disputes between the current employees and Gusano's Pizza to be resolved though individual arbitration. Citing public policy reasons, the district court declared the arbitration policy unenforceable insofar as it could prevent current employees of these restaurants from joining this collective action. On interlocutory appeal, we conclude former employees like Conners lack standing under Article III of the United States Constitution to challenge the arbitration agreement, which applied only to current employees. We vacate the district court's order and remand the case to the district court.

## I.  BACKGROUND

### A.  Facts

On January 2, 2014, Conners, a former server at a Gusano's Pizza restaurant, filed this collective action on behalf of herself and other current and former Gusano's Pizza restaurant servers, alleging the employees were subjected to illegal tip pooling in violation of the FLSA.  Several other former employees soon opted into the action.

A month later, the Gusano's Pizza restaurants each implemented a new arbitration policy in the form of an agreement[1] that purports to bind all current employees who did not opt out of the arbitration agreement.  At the top of the first page of each arbitration agreement, the following text appears:

> This Agreement to Arbitrate Disputes (called the "Agreement") is a contract between you and [employer name].  The Agreement sets out your rights and the rights of [employer name] in connection with the resolution of employment-related disputes.  You have the right to ask independent advisors of your choice, including lawyers, to explain this Agreement to you if that is your choice, but you are not required to do so.

The agreement goes on to explain its scope, the required procedures for invoking arbitration, the effect the agreement will have on the employee's ability to pursue relief in court, the right of every employee to opt out of the agreement free of retaliation, and how to opt out effectively.  Along with the arbitration agreement, each employee received an opt-out form and an explanatory memorandum from the restaurant's general manager.  The memorandum is a two-page document, describing the agreement's fundamental terms in plain English.  The memorandum specifically explains that one effect of the agreement, should an employee not opt out, is to prevent the employee from joining Conners in the present collective action.

---

[1]Although each restaurant adopted its own policy, the parties do not dispute that the substance and format of each is identical.

## B.     Procedure

Shortly after Gusano's Pizza began introducing the new agreement to its current employees, Conners and the other plaintiffs—who at that time were all former employees, not subject to the agreement (collectively, former employees)—filed an "emergency motion to prohibit improper communications with putative class members," in which the former employees asked the district court, among other matters, to (1) "invalidat[e] the [arbitration] agreement as it applies to the claims in this litigation," (2) "prohibit[] the named defendants from communicating with represented opt-in plaintiffs and putative class members regarding the subject matter of this litigation," and (3) "authoriz[e] Plaintiffs to issue a Court-approved corrective notice at the named defendants' expense."  Simultaneously, in another emergency motion, the former employees also sought conditional class certification.  The district court denied both motions but avoided ruling definitively on the substance of the first motion, scheduling a hearing "to determine whether there has been improper communications with the putative class members and whether defendants' communications with putative class members should be enjoined or curtailed."

Throughout the hearing, the district court explained its primary concern with this case is the "disincentive to plaintiffs' lawyers in bringing these types of cases."  The district court feared employers would "jump in real quick" "every time somebody gets ready to get a class going" "and give [its employees] arbitration agreements and cut the plaintiffs off at the knees."  "[A]s a policy concern," the district court questioned whether it "should engage in allowing disincentives to class actions" that might make it infeasible to pursue legitimate claims with small payouts. Upon hearing the evidence and arguments, the district court deferred its final conclusion, stating it needed to reexamine the filings and law before reaching a decision.  Several days later, the district court granted the former employees' "motion for a temporary injunction . . . for the reasons stated during the . . . temporary injunction hearing and to prevent a chilling effect on future collective actions under the [FLSA]."  The district court concluded its one-page written order by "enjoin[ing Gusano's Pizza]

from enforcing the arbitration agreement against any plaintiffs who choose to join this action."

Gusano's Pizza timely filed this interlocutory appeal, asserting appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## II.  DISCUSSION
### A.  Appellate Jurisdiction

Before all else, we must address our jurisdiction to decide this appeal.  See Kreditverein der Bank Austria Creditanstalt fur Niederösterreich und Bergenland v. Nejezchleba, 477 F.3d 942, 945 (8th Cir. 2007).  "[T]he courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions."  28 U.S.C. § 1292(a)(1).

Although the district court understood the former employees' motion as one for a "temporary injunction," held a "temporary injunction hearing," and "enjoined [Gusano's Pizza] from enforcing the arbitration agreement," the former employees now contend the district court's order was not truly an "injunction" within the meaning of § 1292(a)(1).  They instead propose that the district court "merely exercised its discretion . . . to control the conduct and progress of this litigation"—an act not immediately appealable. See, e.g., McLaughlin Gormley King Co. v. Terminix Int'l Co., 105 F.3d 1192, 1194 (8th Cir. 1997) (concluding that despite the district court's label of "injunction," the order at issue "look[ed] very much like a nonappealable order controlling the conduct and progress of litigation before the court").  The former employees are right to look beyond the district court's label, see, e.g., id., but here, the label appears well-chosen, and the substance of the court's order confirms § 1292(a)(1)'s applicability.

The Supreme Court has explained § "1292(a)(1) . . . provide[s] appellate jurisdiction over orders that grant or deny injunctions and orders that have the

*practical effect* of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 287-88 (1988) (emphasis added) (quoting Carson v. Am. Brands, Inc., 450 U.S. 79, 84 (1981)).  Applying this rule, we have held an order denying a motion to compel arbitration was immediately appealable under § 1292(a)(1), reasoning,

> "Orders denying arbitration do have an injunctive effect and have serious, perhaps irreparable, consequence.  The order is injunctive because it enjoins proceedings in another tribunal.  It has serious consequences because of the irreparable harm that exists when arbitration is denied *ab initio*.  If a party must undergo the expense and delay of trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever."

Nordin v. Nutri/System, Inc., 897 F.2d 339, 342 (8th Cir. 1990) (alteration omitted) (quoting Kan. Gas & Elec. Co. v. Westinghouse Elec. Corp., 861 F.2d 420, 422 (4th Cir. 1988)).  The district court's order here has the same "injunctive effect," id., because it prevents Gusano's Pizza from using its agreement with current employees to relocate a dispute to an arbitral forum.  Like Nordin, the district court's order "enjoining" the arbitration agreement's enforcement as to current employees "can only be effectively challenged on immediate appeal because the advantages of arbitration will be forever lost if the appeal is delayed" until the entry of a final judgment.  Id.

We are not convinced by the former employees' suggestion the district court's order, like that in McLaughlin, was simply "'controlling the conduct and progress of litigation before the court.'" (Quoting McLaughlin, 105 F.3d at 1194).  McLaughlin turned on a district court order "briefly freezing the parties' dispute resolution activities until it determine[d] arbitrability." Id.  That order, which "further[ed the district court's] expeditious determination of the arbitrability question" and spared the parties the cost of a potentially futile arbitration, did not deny with finality the

arbitration question as does the district court's order in this case. Id. Unlike the present situation, McLaughlin did not trigger the concerns expressed in Nordin.

Both the form and substance of the district court's order establish it is immediately appealable under § 1292(a)(1).

### B.     Standing

Our second, equally indispensable task is determining whether the former employees had Article III standing to seek an injunction of the arbitration agreement, see Park v. Forest Serv. of U.S., 205 F.3d 1034, 1036 (8th Cir. 2000), even though the agreement covers only *current* employees. "In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." Summers v. Earth Island Inst., 555 U.S. 488, 492 (2009).

"The doctrine of standing . . . requires federal courts to satisfy themselves that 'the plaintiff[s] ha[ve] alleged such a personal stake in the outcome of the controversy as to warrant *[their]* invocation of federal-court jurisdiction.'" Id. at 493 (alterations added) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). "To seek injunctive relief, [the] plaintiff[s] must show that [they are] under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Id.

The former employees claim they "ha[ve] a legally cognizable interest in" pursuing their FLSA claim in the form of a collective action, a mechanism that permits employees with similar claims to pool their resources and ease the individual burden of litigation. According to the former employees, their procedural "right to

bring a collective action was curtailed by Gusano's [Pizza's]" arbitration agreement, causing them to "suffer[] a concrete and particularized injury": that is, an increased individual share of litigation expenses. It may be that this increased portion of expenses is "concrete and particularized," as the former employees assert, but they forget that the threat of this injury also "must be actual and imminent, not conjectural or hypothetical." Id.; see also Davis v. FEC, 554 U.S. 724, 734 (2008) ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.").

We must assess standing in view only of the facts that existed at the time the former employees challenged the enforceability of the arbitration agreement. See Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000) ("Because standing is determined as of the lawsuit's commencement, we consider the facts as they existed at that time."); Park, 205 F.3d at 1037-38, 1040 (finding a lack of standing to seek injunctive relief because the plaintiff could not satisfy her burden of showing a "real and immediate threat" and deciding she could not "use evidence of what happened after the commencement of the suit to make this showing"). At the time the crucial motion was filed here, only *former*, and no current, employees had opted into this collective action, and there was no evidence suggesting this circumstance would soon change.

When asked at the evidentiary hearing how many current employees were expected to join the lawsuit, Gusano's Pizza's counsel said he "ha[d] no idea," because despite the fact that "plaintiffs' attorneys in this case ha[d] actively solicited clients for months" at that point, "everyone . . . signed up so far [wa]s an ex-employee." Asked the same question, counsel for the former employees only could provide a hopeful guess: "I think we will get a significant percentage, but I'm being optimistic." The former employees' counsel explained his primary concern "is that the process will be preserved" and asserted "the practical effect" of granting an injunction is that employees "will get the Court-ordered notice if the Court asserts a

collective action, and employees will get to exercise their choice whether or not they want to join into this case . . . employees will get the right to choose." Yet we find no indication that a current employee subject to the arbitration agreement was expected, at the time of the motion, to join the lawsuit.

On this record, the former employees have not satisfied their burden of proving a non-conjectural threat of harm. See Summers, 555 U.S. at 493 (explaining the plaintiff "bears the burden of showing that he has standing for each type of relief sought"). With no plaintiffs against whom the arbitration agreement could be enforced, nor an indication that the agreement chilled the participation of any current employees, one must resort to pure speculation to conclude the former employees' portion of the litigation costs is any greater than it would have been absent the agreement. This does not satisfy Article III.

The former employees also cannot step into the shoes of current employees who are putative plaintiffs. The Supreme Court recently held that the sole plaintiff in an FLSA collective action whose individual claim was mooted during the course of litigation "ha[d] no personal interest in representing putative, unnamed claimants." Genesis Healthcare Corp. v. Symczyk, 569 U.S. ___, ___, 133 S. Ct. 1523, 1532 (2013). The Supreme Court rejected the argument that the plaintiff held a personal stake in the "case based on a statutorily created collective-action interest in representing other similarly situated employees under [29 U.S.C.] § 216(b)." Id. at ___, 133 S. Ct. at 1530. The Supreme Court reasoned that in FLSA collective actions "'conditional certification' does not produce a class with an independent legal status" as it does in class actions under Federal Rule of Civil Procedure 23, nor does it "join additional parties to the action." Id. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." Id. (citations omitted). For the same reason the plaintiff in Genesis Healthcare could not overcome mootness based on the rights of "putative, unnamed claimants," id. at

-9-

___, 133 S. Ct. at 1532, the former employees cannot gain standing here by defending the rights of current employees, not yet joined in the action.

## III.   CONCLUSION

Because the former employees lacked standing to challenge the current employees' arbitration agreement, the district court was without jurisdiction to enjoin that agreement's enforcement.  We vacate the district court's injunction order and remand this case for further proceedings.

_____