# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 18-1735

———————————————

Acuity, A Mutual Insurance Company

*Plaintiff - Appellant*

v.

Rex, LLC; Tab Robert Barks; Ronald Lee Gean; Estate of Jean Carol Gean; Swift Transportation Company of Arizona, LLC; Gaganjot Singh Virk; Auto-Owners Insurance Company; Air EVAC EMS, Inc., also known as Air Evac Lifeteam; Deaconess Hospital, Inc.; Heartland Regional Medical Center, also known as Marion Hospital Corporation; Zurich American Insurance Company

*Defendants - Appellees*

———————————

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

———————————

Submitted: January 16, 2019
Filed: July 12, 2019

———————————

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

———————————

GRUENDER, Circuit Judge.

Acuity appeals the district court's[1] orders requiring it to deposit $21 million in disputed insurance proceeds to maintain its federal statutory interpleader claim and dismissing Ronald Gean and the Estate of Jean Carol Gean ("the Geans") for lack of personal jurisdiction in its declaratory judgment claims. We affirm.

On August 5, 2016, a truck operated by Rex, LLC struck a vehicle driven by Ronald Gean, injuring him and killing his passenger Jean Carol Gean. Rex and its driver were covered by a business auto insurance policy issued by Acuity with a stated liability limit of $1 million for "each accident."

On December 30, 2016, Acuity filed a two-count complaint in the U.S. District Court for the Eastern District of Missouri against the Geans and several other parties affected by the accident. Count I sought to distribute the $1 million policy proceeds among potential claimants using federal statutory interpleader. *See* 28 U.S.C. § 1335. Count II sought a declaratory judgment that the applicable policy limit was in fact $1 million per accident. Acuity also moved to deposit the stated policy limit of $1 million into the registry of the court as required by § 1335(a), the district court granted the motion, and Acuity submitted the funds to the court's registry.

Meanwhile, on January 4, 2017, the Geans brought suit in Illinois state court for personal injury, wrongful death, and a declaratory judgment that Acuity's $1 million policy limit "stacked" for each of the twenty-one vehicles covered by the policy, providing total coverage of $21 million. The Geans also filed a motion in federal court to dismiss Acuity's federal action, arguing that the district court lacked subject-matter jurisdiction under the federal interpleader statute unless Acuity deposited the disputed $21 million, rather than the $1 million in the court's registry.

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

The Geans also alleged that the district court lacked personal jurisdiction over them and that venue was improper in the Eastern District of Missouri.

The district court held the motion to dismiss in abeyance. Agreeing with the Geans that § 1335(a) requires an interpleader plaintiff to deposit the full disputed sum, it "granted [Acuity] leave to post the appropriate amount of $21 million or dismiss Count I" and warned that "[f]ailure to post the appropriate amount or dismiss Count I may result in the Court dismissing Count I for lack of subject matter jurisdiction." In response, Acuity filed an amended complaint dismissing its interpleader claim and adding an additional claim for declaratory judgment under Missouri state law.

The district court next concluded that it lacked personal jurisdiction over the Geans because they did not have sufficient minimum contacts with Missouri, dismissed them from the lawsuit, and ordered Acuity to show cause why the lawsuit could proceed in their absence. Acuity conceded that the Geans were necessary and indispensable parties, and the district court dismissed the lawsuit without prejudice. Acuity appealed and challenges the district court's orders concerning subject-matter and personal jurisdiction.

We must first address whether Acuity waived appellate review of the district court's order concerning subject-matter jurisdiction by amending its complaint to dismiss its interpleader claim in response to the district court's threat to dismiss if Acuity did not deposit $21 million. Generally, "an amended complaint supercedes an original complaint and renders the original complaint without legal effect." *Tolen v. Ashcroft*, 377 F.3d 879, 882 n.2 (8th Cir. 2004). Thus, a plaintiff who amends his complaint and dismisses certain claims waives his right to appeal them. *Id.* But we have refused to find waiver where the court's involuntary dismissal of the original counts "struck a vital blow to a substantial part of plaintiff's cause of action." *Williamson v. Liverpool & London & Globe Ins. Co.*, 141 F. 54, 57 (8th Cir. 1905);

*see also Karnes v. Poplar Bluff Transfer Co. (In re Atlas Van Lines, Inc.)*, 209 F.3d 1064, 1067 (8th Cir. 2000); *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617-18 (6th Cir. 2014). The Geans nonetheless argue that *Tolen* controls and that Acuity's dismissal of its interpleader claim was not truly involuntary because the court gave Acuity a choice other than dismissal, namely depositing $21 million.

We conclude that Acuity did not waive its right to appeal the district court's ruling concerning the deposit requirement. In giving Acuity the option of depositing the full $21 million or dismissing its interpleader claim, the district court rejected Acuity's interpretation of the requirements of § 1335.[2] Rather than continuing to advance an argument that the district court had rejected, Acuity proceeded with the remainder of its case. As the Seventh Circuit has pointed out, "It is not waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected." *Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990). These factors support the conclusion that Acuity did not waive its arguments concerning the deposit required under § 1335. As we have indicated in the removal context, a motion to amend is involuntary where the plaintiff "faced the Hobson's choice of amending his complaint or *risking* dismissal." *In re Atlas Van Lines, Inc.*, 209 F.3d at 1067 (footnote omitted and emphasis added). While Acuity could have avoided such a choice by depositing $21 million, the requirement to deposit such a large sum still confronted the company with "a patently coercive predicament." *Id.*

---

[2]While the district court said that "[f]ailure to post the appropriate amount or dismiss Count I may result in the Court dismissing Count I for lack of subject matter jurisdiction," the court's order left no doubt that it believed it lacked subject-matter jurisdiction. Its use of the word "may" is therefore not dispositive. *Cf. Meierhenry Sargent LLP v. Williams*, 915 F.3d 507, 509 (8th Cir. 2019) (noting that labels do not trump the substance of an order for the purpose of determining appellate jurisdiction over an interlocutory appeal).

To be sure, Acuity could have stood on its original complaint and forced the district court to dismiss its interpleader claim. But, as the concurring opinion acknowledges, Acuity "would have arrived at the same place on appeal" had it done so.[3] *Post*, at 12. Given that nothing of substance turns on the distinction, enforcing waiver under these circumstances "merely sets a trap for unsuspecting plaintiffs with no concomitant benefit to the opposing party." *See Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1518 (10th Cir. 1991) (footnote omitted); 6 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1476 (3d ed. 2019) ("It therefore is not logical to deny a party the right to appeal simply because the party decides to abide by the court's order and amend the pleading rather than allowing an adverse judgment to be entered and taking an immediate appeal."). Thus, we may review the district court's order concerning subject-matter jurisdiction over Acuity's interpleader claim.

We review the existence of subject-matter jurisdiction *de novo*. *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013). Federal statutory interpleader allows a party holding money or property to join the various parties asserting mutually exclusive claims, thereby avoiding the threat of multiple liability or multiple lawsuits. *Gaines v. Sunray Oil Co.*, 539 F.2d 1136, 1141 (8th Cir. 1976). A district court has jurisdiction over a statutory interpleader claim if there are adverse claimants to money or property worth at least $500 and diverse citizenship between at least two of the adverse claimants. 28 U.S.C. § 1335(a). In addition, the plaintiff must deposit the money or property in the registry of the district court. *Id.*

---

[3]It is true, as the concurring opinion points out, that Acuity's strategy forced us "to wade into our jurisprudence concerning the *Atlas/Humphrey* exception to the amended-complaint rule." *Post*, at 12. But had Acuity prevailed on its alternative claims after it amended its complaint, it would have had no reason to appeal the difficult questions surrounding interpleader. Thus, it is not clear that a strict application of *Tolen* in this context advances judicial economy.

Several courts have held that a district court lacks jurisdiction over an interpleader action unless the stakeholder deposits the sum claimed by the claimants. *See, e.g.*, Metal *Trans. Corp. v. Pac. Venture S.S. Corp.*, 288 F.2d 363, 365 (2d Cir. 1961); *Miller & Miller Auctioneers, Inc. v. G. W. Murphy Indus.*, 472 F.2d 893, 895 (10th Cir. 1973); *N.Y. Life Ins. Co. v. Lee*, 232 F.2d 811, 815 (9th Cir. 1956); 7 Wright *et al.*, § 1716. But Acuity points to a Third Circuit case and suggests that the district court should first peek ahead to the merits of its declaratory judgment claim contesting the Geans' stacking argument before setting the deposit requirement. *See U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 210 (3d Cir. 1999). In an opinion by then-Judge Samuel Alito, the court explained that the deposit requirement "is not a mechanical process under which the court uncritically searches for the highest amount claimed by the adverse claimants," and it held that "[a]mounts that are not realistically within the scope of the interpleader as pleaded are not required to be deposited or bonded to sustain federal jurisdiction." *Id.* Acuity therefore argues that it needed to deposit only the $1 million it believes it owes, not the $21 million claimed by the Geans.

We agree with the district court that subject-matter jurisdiction is lacking because Acuity did not deposit the disputed amount into the court's registry. First, we previously held that a "stakeholder may not compel a party to litigate his claim in interpleader unless he deposits with the court an amount equal to the sum claimed *by that party*." *Gaines*, 539 F.2d at 1142 (emphasis added). "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

Second, it is not clear that Acuity would prevail even under the Third Circuit's "less mechanical" framework. The Third Circuit stated that the "stakeholder invoking interpleader must deposit the largest amount for which it may be liable in view of the subject matter of the controversy." *Asbestospray*, 182 F.3d at 210. Because only a limited sum remained in unexhausted policy proceeds, the claimants in *Asbestospray*

could have recovered a greater amount only had there been a claim of collusion or fraud regarding the previous insurance settlements that had depleted the policy. *Id.* at 210-11. Thus, a greater sum was "not realistically part of the interpleader action *as it was pleaded*." *Id.* at 211 (emphasis added). But here, by pairing its interpleader claim with one for declaratory judgment, Acuity itself admitted that $21 million was in controversy and that Acuity would be liable for more than the $1 million it deposited if the district court concluded that coverage stacked.

Third, considerations of fairness also support the conclusion that Acuity must deposit the full disputed amount. If the district court peeked ahead to the merits and decided that coverage stacked, Acuity's $1 million deposit would not satisfy the requirements of § 1335(a) and the court would lack subject-matter jurisdiction over both the interpleader and declaratory judgment counts. Acuity could then presumably get a second bite at the apple on its declaratory judgment claim in another proceeding notwithstanding the district court's initial ruling. Moreover, the personal jurisdiction requirements are relaxed for interpleader actions. *See* 28 U.S.C. § 2361 (allowing nationwide service of process). While scholars have questioned the value of the deposit requirement, it arguably protects claimants who may be "summoned to the chosen forum from a substantial distance under the statute's nationwide-process provision." 7 Wright *et al.*, § 1716. Although Congress intended that federal statutory interpleader "broadly . . . remedy the problems posed by multiple claimants to a single fund," interpleader does not provide "an all-purpose 'bill of peace'" for "multiparty litigation arising out of a mass tort." *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 535-37 (1967); *see also* 7 Wright *et al.*, §§ 1707, 1709. Because Congress has set aside many of the traditional limitations on interpleader, we are reluctant to disregard remaining limitations under these circumstances.

In sum, our precedent and other considerations dictate that Acuity deposit the amount claimed by the Geans, *see Gaines*, 539 F.2d at 1142, or at the very least "the largest amount for which it may be liable in view of the subject matter of the

-7-

controversy," *Asbestospray*, 182 F.3d at 210. As a result, the district court correctly held that Acuity needed to deposit $21 million.

Finally, we reject Acuity's argument that the district court had personal jurisdiction over the Geans. As noted, the personal jurisdiction requirements are relaxed for interpleader actions. *See* 28 U.S.C. § 2361. But Acuity no longer enjoyed this relaxed standard after dismissing its interpleader count, and it had to establish personal jurisdiction over the Geans for its remaining declaratory judgment counts under Missouri's long-arm statute. *See K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011). We review personal jurisdiction issues *de novo*. *Id.* at 591. Acuity contends that the Geans "purposefully and intentionally availed themselves of the benefits and protections of the laws of the State of Missouri" by claiming that the Acuity insurance policy stacks to afford $21 million in coverage per incident. The company claims that "instigat[ing] a 'coverage controversy'" is sufficient to confer specific personal jurisdiction.

The due process clause requires that "the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Sufficient minimum contacts requires some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821(8th Cir. 2014) (internal quotation marks omitted). Under our five-factor test for assessing the sufficiency of a defendant's contacts, we consider "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest

of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The Geans are citizens of Michigan and were injured in an automobile accident in Illinois by a truck operated by Rex, a Missouri company. They assert that Rex's insurance policy included $21 million in coverage, but the Geans have no other ties to Missouri. In effect, Acuity argues that invoking Missouri law is in itself sufficient to subject a party to personal jurisdiction in Missouri. But the Supreme Court has rejected Acuity's view by holding that choice-of-law provisions "standing alone would be insufficient to confer jurisdiction." *Burger King*, 471 U.S. at 482. A choice-of-law provision presupposes that the parties to the agreement will invoke the chosen state's law should a dispute arise. Just as that act alone is insufficient to confer personal jurisdiction, merely making an argument that an insurance contract is subject to one interpretation rather than another is not enough. Having carefully considered the five-part test, *see Burlington*, 97 F.3d at 1102, we agree that the district court lacked personal jurisdiction over the Geans in the remaining declaratory judgment action.

For all these reasons, we affirm.

SHEPHERD, Circuit Judge, concurring in part and concurring in the judgment.

I agree with the Court that the district court did not err in concluding that it lacked personal jurisdiction over the Geans in the remaining declaratory-judgment action. I also agree with the Court that, assuming Acuity did not waive its right to appeal the district court's ruling concerning the deposit requirement, we are bound by Gaines v. Sunray Oil Co., 539 F.2d 1136, 1142 (8th Cir. 1976) ("A stakeholder may not compel a party to litigate his claim in interpleader unless he deposits with the court an amount equal to the sum claimed by that party."), and, therefore, the district

court did not err in concluding that it lacked subject-matter jurisdiction because Acuity did not deposit the disputed amount into the court's registry.

However, I write separately because Acuity *did* waive its right to appeal the district court's ruling concerning the deposit requirement. In my view, Acuity did not face a Hobson's choice, as understood in our jurisprudence concerning the Atlas/Humphrey exception to the amended-complaint rule. See Karnes v. Poplar Bluff Transfer Co. (In re Atlas Van Lines, Inc.), 209 F.3d 1064, 1067 (8th Cir. 2000) ("[W]hen a district court orders a party to amend its complaint or when the decision to amend is otherwise involuntary, the question of proper removal must be answered by examining the original rather than the amended complaint") (citing Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1241 (8th Cir. 1995) (holding motion to amend complaint was involuntary because the plaintiff faced the Hobson's choice of amending his complaint or risking dismissal)); see also Bernard v. U.S. Dep't of Interior, 674 F.3d 904, 909 (8th Cir. 2012) ("The Bernards offer no authority indicating that the involuntariness exception to the amended complaint rule applies outside of the removal context, and we conclude that it is not applicable here."); Blando v. Nextel W. Corp. (In re Wireless Tel. Fed. Cost Recovery Fees Litig.), 396 F.3d 922, 929 (8th Cir. 2005) (refusing to "extend the Humphrey exception beyond cases where the plaintiff faces dismissal").

As the Court notes, the district court did not grant the Geans' motion to dismiss for lack of subject-matter jurisdiction; it held the motion in abeyance and granted Acuity leave to deposit the remaining funds or dismiss its interpleader count, which is consistent with federal practice. See 7 Charles Alan Wright et al., Federal Practice and Procedure, § 1716, at 646 (3d ed. 2001) (explaining that district courts "generally will give the stakeholder a second opportunity to comply [with the jurisdictional bond requirement] before dismissing the action"). Subsequently, Acuity chose to voluntarily dismiss its interpleader count without prejudice, amend its complaint for declaratory judgment (it added allegations supporting the court's personal jurisdiction

over the Geans), and add an additional count to its complaint for declaratory relief under Missouri law. However, Acuity did not have to go down this path. Instead, it could have stood on its original complaint and challenged the district court's decision—that it lacked subject-matter jurisdiction—on appeal in the first instance.

If, as the Court states, "the district court rejected Acuity's interpretation of the requirements of [28 U.S.C.] § 1335" in the first instance, supra at 4, then Acuity could have stood on its original complaint, not deposited the additional funds, and appealed the district court's inevitable dismissal without prejudice for lack of subject-matter jurisdiction. See Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) ("[T]his court has jurisdiction to determine whether the district court properly dismissed the case for lack of subject-matter jurisdiction[.]"); List v. County of Carroll, 240 F. App'x 155, 156 (8th Cir. 2007) (per curiam) (noting that a dismissal for lack of subject matter jurisdiction is effectively "a dismissal without prejudice"); County of Mille Lacs v. Benjamin, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent."); see also Kowalski v. Boliker, 893 F.3d 987, 994-95 (7th Cir. 2018) ("[A] dismissal for want of subject-matter jurisdiction is necessarily without prejudice because it does not preclude pursuit of the action in a different forum. Such a dismissal is, however, appealable." (citation omitted)).

Indeed, at oral argument, counsel for Acuity acknowledged that, after the district court granted Acuity leave to deposit the remaining funds or dismiss its interpleader count, Acuity could have done neither and instead "could have allowed the dismissal to happen." Oral Argument at 38:29-30. Interestingly, had Acuity stood on its original complaint and appealed the district court's dismissal without amending its complaint, it would have arrived at the same place on appeal, arguing the merits of the subject-matter-jurisdiction issue. However, in that procedural posture, we would not have to wade into our jurisprudence concerning the Atlas/Humphrey exception to the amended-complaint rule.

-11-

Accordingly, because Acuity could have taken an entirely different and viable course of action in this case, it did not face a Hobson's choice, as understood in our jurisprudence concerning the Atlas/Humphrey exception to the amended-complaint rule and, therefore, has waived its right to appeal the district court's ruling concerning the deposit requirement when it amended its complaint voluntarily dismissing its interpleader count. See Tolen v. Ashcroft, 377 F.3d 879, 882 n.2 (8th Cir. 2004).

_____