**Opinion issued December 28, 2021.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-19-00504-CV**

———————————

**MARK BROWN, Appellant**

**V.**

**WILLIAM MCCLURE, ECCL 4:12, LLC, AND NEXTGEN PARKING, LLC, Appellees**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-33189**

---

# MEMORANDUM OPINION[1]

---

[1] We issued our original opinion and judgment in this appeal on July 29, 2021. Appellees William McClure and ECCL d/b/a Nextgen Parking, LLC filed a motion for rehearing. We grant the motion for rehearing, withdraw our July 29, 2021 opinion and judgment, and issue this opinion and judgment in their place.

In this personal injury case, appellant Mark Brown ("Brown") appeals the trial court's order granting summary judgment to appellee ECCL d/b/a Nextgen Parking, LLC[2] ("ECCL") on Brown's claims for negligent entrustment and negligent supervision and final judgment rendered on the jury's verdict against appellee William McClure ("McClure") awarding Brown $1,000 in damages and $25,186.04 in court costs. In three issues, Brown contends the trial court erred when it (1) denied him the right to depose McClure's experts, (2) granted summary judgment in favor of ECCL on his negligent entrustment and negligent supervision claims, and (3) excluded certain records from trial. We affirm.

## Background

ECCL provides parking management systems throughout North America. McClure is a minority owner and manager at ECCL. He is employed at ECCL as a Chief Engineer in field operations management. McClure uses a company-supplied vehicle for work and for "de minimis" personal use.

On June 20, 2015, McClure was driving ECCL's company vehicle on his day off to run a personal errand when he collided with Brown's vehicle. At the time of the accident, McClure was leaving the parking lot of an apartment complex to enter a two-way street. As McClure exited the parking lot's gate, he crossed over the

---

[2]     In its order, the trial court noted that ECCL d/b/a Nextgen Parking, LLC "was incorrectly sued as 'ECCL 4 12, LLC' and 'NextGen Parking LLC.'"

southbound lane and turned left into the northbound lane. As he turned left, he failed to see Brown traveling in the northbound lane and struck the rear left-side of Brown's vehicle.

## A. Pretrial Proceedings

Nearly two years later, on May 17, 2017, Brown sued ECCL asserting causes of action for negligence based on vicarious liability, negligent hiring, supervision, training, or retention, and negligent entrustment of a motor vehicle. ECCL answered asserting a general denial and several affirmative defenses. Brown later amended his petition to assert a claim for negligence against McClure. McClure answered asserting a general denial and affirmative defenses.

### 1. Dispositive Motions

On August 1, 2017, ECCL filed a traditional motion for summary judgment arguing it was entitled to judgment as a matter of law on Brown's vicarious liability and negligence claims. Brown filed a response to ECCL's motion for summary judgment and, in the alternative, a motion for continuance, arguing ECCL's motion was premature because relevant discovery was still outstanding.

On October 3, 2017, Brown moved to compel ECCL's and McClure's responses to discovery requests and later amended his motion. The trial court granted in part and denied in part Brown's amended motion to compel. Brown then filed a supplemental response to ECCL's motion for summary judgment and, in the

alternative, a motion for continuance, and supplemental motion to compel, asserting ECCL had not complied with the trial court's order on Brown's motion to compel. The trial court denied ECCL's motion for summary judgment and Brown's motion for continuance.

On February 6, 2018, the trial court issued its docket control order. A week later, on February 13, 2018, Brown filed a combined traditional motion for summary judgment on his negligence claim against McClure and a no-evidence motion for summary judgment on ECCL's and McClure's affirmative defenses. On February 16, 2018, ECCL and McClure filed a motion to compel an independent medical examination of Brown, who claimed he had "suffered severe injuries, including . . . a traumatic brain injury" because of the collision. Brown opposed the motion.

The parties continued to have several discovery disputes over the course of the litigation resulting in several telephonic discovery conferences with the trial court. On March 21, 2018, the trial court sent a letter to counsel advising them that due to the parties' inability to cooperate with each other during the discovery process and the data size of the emails and attachments sent for discovery disputes, it would appoint a discovery master for the parties. On April 9, 2018, the trial court entered an order appointing a master in chancery.[3]

---

[3] In its order, the court noted that although the case "seems to be an ordinary personal injury matter . . . counsel have decided that the case needs to consume massive resources both for its clients and for this Court." The court stated:

ECCL then filed a combined traditional and no-evidence motion for summary judgment asserting that Brown had no evidence to support his claims and therefore ECCL was entitled to summary judgment as a matter of law.[4]  The trial court (1) granted ECCL's traditional and no-evidence motion for summary judgment on all of Brown's claims against it, and (2) denied Brown's traditional motion for summary judgment on his negligence claim against McClure and no-evidence motion for summary judgment on ECCL's and McClure's affirmative defenses.  Brown filed a motion for rehearing of the trial court's order granting summary judgment in favor of ECCL, which the trial court denied.

## 2.    Expert Depositions and Medical Examination

By letter dated July 12, 2018, Brown requested that McClure provide dates for the depositions of five of McClure's experts—Dr. Sebastian Bawab, Dr. David

---

We have come to this situation because the Parties refuse to work with each other, find each other "to be unreasonable," and have wholly failed to comport with this Court's discovery protocol.  Further, [the] Court has been inundated with electronic messages that cause the Court not to be able to communicate with its staff or other counsel because of the sheer size of the e-mail correspondence. The Court can no longer handle this matter in the due course of its business. This Court finds that this case is exceptional because of the actions of counsel involved in the case and that there is good cause for an appointment of a Master in Chancery.

[4]    ECCL contends that it moved for summary judgment on all of Brown's claims while Brown asserts that ECCL failed to move for summary judgment on his negligent supervision claim.

B. Rosenfield, Dr. Walter Harrell, Dr. William Wellborn, and Dr. Leonard Hershkowitz—on or before July 16, 2018, noting that if McClure did not respond by then, Brown's counsel would notice the depositions at her convenience. The next day, McClure's counsel responded that (1) despite defense counsel's previously providing dates for the deposition of at least two of the requested experts, Brown's counsel had failed to notice the depositions, and (2) pursuant to Texas Rule of Civil Procedure 195.3(b), McClure had the right to depose plaintiffs' experts prior to the deposition of any defense expert on the same subject and therefore she would not provide deposition dates until Brown first provided deposition dates for his experts.

Brown's counsel unilaterally noticed the depositions of the five requested expert witnesses. McClure moved to quash the depositions as well as the deposition of Dr. Huma Haider, one of Brown's experts. Brown moved to compel the expert depositions. Following a hearing, the discovery master ordered that (1) McClure make his five expert witnesses available for deposition between September 17 and 30, 2018, and (2) Brown notice the deposition of Dr. Haider between August 27, 2018 and September 14, 2018. Brown eventually deposed Dr. Rosenfield, but he did not depose the rest of McClure's experts.[5]

On October 31, 2018, the trial court held a pretrial hearing. Among the pending discovery disputes were McClure's request for an independent medical

---

[5]    McClure de-designated Dr. Wellborn as his expert on September 27, 2018.

examination of Brown and Brown's request for additional records he believed existed and had not yet been produced from a company that had conducted surveillance of him. After announcing that trial would begin on either December 10 or 13, 2018, the trial court stated:

> And on this discovery motion, I'm either going to stop discovery as of today and—well, as of whenever the discovery deadline was or you both get the discovery you want. If you don't get the [medical] examination, they don't get to put on evidence of the TBI [traumatic brain injury]. I'm going to give you guys about five minutes to figure that out and then I'll come back in and whatever decision you want to make we'll go with.

Following the break, the parties agreed to begin trial on December 13. Brown's counsel informed the trial court that he would go forward with the defense's medical examination ("DME") of Brown and McClure's counsel confirmed that McClure had produced all surveillance records in his possession.

Later during the same pretrial hearing, Brown's counsel complained about "significant violations of the discovery master orders," in particular, McClure's alleged failure to make his experts available for deposition. In response, the trial court stated, "You know what, it seems to me that it's a lot easier just to shut down discovery. Let's just do that." Brown's counsel then asked whether the DME would still go forward, to which the trial judge replied, "It's done. No, it's not going forward. That's exactly why you don't get to put on TBI evidence."

7

The following exchange later took place:

[Brown's counsel]: Judge, we'd like to do the DME and close discovery after the DME.  Can we at least do that?

[Brown's counsel]: We will take defendant's experts live at trial.

[Brown's counsel]: We need to present our TBI case.

[The Court]: I don't know.  Can you?

[Brown's counsel]: Yes.

[The Court]: If I say okay to that, will this end all the discovery issues we have in this case?

[Brown's counsel]: Yes.

[McClure's counsel]: I don't have a problem with that if that's the way the Court wants to deal with this case.

[Brown's counsel]: We can take the witnesses live.

. . . .

[The Court]: This case will go to trial on December 3rd at 9:00 a.m.[6] Each side will have six hours to present their case. Six hours includes both direct and cross.  If there's a need for any sort of pretrial, it will occur the week prior and it's my understanding—I'm going to have to have both sides agree to this—if this DME goes forward tomorrow, there are no other outstanding discovery issues that will have to be ruled on by this court or a discovery master in this matter.  Is that correct?

[Brown's counsel]: Correct.

[McClure's counsel]: Yes.

---

[6] The trial court reset the trial date from December 13.

8

[The Court]: Okay. I'll let the DME go forward. Thank you-all.

### 3. Dr. Bradley Shore and SPECT Scan Images

On November 14, 2018, the trial court held a hearing on McClure's motion to strike one of Brown's designated experts, Dr. Bradley Shore ("Dr. Shore"), and to exclude his late-produced report concerning certain Single-Photon Emission Computerized Tomography ("SPECT") imaging studies.[7] Dr. Shore is a reading radiologist at CereScan who reviewed diagnostic SPECT scan images of Brown's brain. McClure argued that Dr. Shore's report was a late-designated expert report, while Brown responded that the report was an admissible medical record. The trial court excluded Dr. Shore's report but ultimately admitted the SPECT scan images at trial, allowing another of Brown's experts, Dr. Shelly Savant, to testify about the images.

### B. Trial Proceedings

At trial, McClure admitted the car accident was his fault, but he contested Brown's claimed damages and injuries. The trial court directed a verdict that McClure was liable for the accident based on his admission. Thus, during trial, the parties focused on Brown's purported injuries and damages, in particular, his alleged traumatic brain injury.

---

[7]   SPECT scans, or MRI spectroscopy, look at metabolites in the brain as a function of blood flow.

During the five-day trial, the jury heard testimony, both live and by deposition, from several fact and expert witnesses. At the conclusion of trial, the jury rendered its verdict finding that Brown's damages proximately caused by the June 20, 2015 accident totaled $1,000 in past physical pain. In accordance with the jury's verdict, the trial court signed a final judgment on April 10, 2019, awarding Brown $1,000 in damages, pre- and post-judgment interest, and taxable court costs totaling $25,186.04.

Brown filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**Pretrial Hearing Discovery Rulings**

In his first issue, Brown contends that during the October 31, 2018 pretrial hearing, the trial court abused its discretion by denying him the right to depose McClure's experts despite the discovery master's three previous orders compelling McClure to make his experts available for depositions. McClure argues that (1) Brown waived his right to appeal the alleged denial of expert depositions, (2) the trial court did not abuse its broad discretion when it enforced its docket control order, and (3) any error was rendered harmless by Brown's cross-examination of McClure's experts at trial.

**A.     Standard of Review**

The scope of discovery rests within the discretion of the trial court. *See Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989); *In re Morgan*, 507 S.W.3d 400, 403 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Trial courts have broad discretion in matters of discovery. *See Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982) ("[T]he court is given wide discretion in managing its docket, and we will not interfere with the exercise of that discretion absent a showing of clear abuse."); *Macy v. Waste Mgmt., Inc.*, 294 S.W.3d 638, 651 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The same standard applies to a trial court's ruling on requests to obtain additional discovery. *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 643-44 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A party who claims the trial court abused its discretion in a discovery matter labors under a heavy burden—it must establish that, under the circumstances of the case, "the facts and law permitted the trial court to make but one decision." *Shell Oil Co. v. Smith*, 814 S.W.2d 237, 241 (Tex. App.—Houston [14th Dist.] 1991, no writ) (emphasis in original).

**B.     Analysis**

Brown does not dispute he failed to preserve error on his deposition discovery dispute issue. Rather, he contends the trial court forced his counsel into a Hobson's choice, making him choose between conceding his discovery dispute or death

11

penalty sanctions.  He argues that, as a result, any failure to preserve error does not foreclose him from raising his deposition discovery issue on appeal.[8]

Brown points to the following statement by the trial court addressing the parties' dispute about the requested medical examination of Brown:

> And on this discovery motion, I'm either going to stop discovery as of today and—well, as of whenever the discovery deadline was or you both get the discovery you want.  If you [McClure] don't get the examination, they don't get to put on evidence of the TBI [traumatic brain injury]. I'm going to give you guys about five minutes to figure that out and then I'll come back in and whatever decision you want to make we'll go with.

Brown asserts that "[a]fter the threat, [his] counsel agreed to submit to the defense medical examination."  Brown also contends the trial court forced him into another Hobson's choice when it *sua sponte* threatened him with death penalty sanctions without prior notice; that is, not permitting him to present evidence of his traumatic

---

[8] Although Brown concedes no Texas court has adopted this "Hobson's choice" preservation exception, he urges us to adopt the holding in *Acuity v. Rex,* LLC, 929 F.3d 995 (8th Cir. 2019).  In *Acuity*, the Eighth Circuit Court of Appeals found that an insurer had not waived its right to appeal the district court's order requiring it to deposit $21 million into the court's registry by amending its complaint to dismiss its interpleader claim because although the insurer could have avoided dismissal of its claim by depositing the $21 million, the requirement to deposit such a large sum confronted the company with "a patently coercive predicament." *Id.* at 999.  The facts of *Acuity* are distinguishable and nothing in the holding convinces us that we should adopt a "Hobson's choice" preservation rule.  We decline to apply the holding of *Acuity* to this case. *See generally Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court . . . they are *obligated* to follow only higher Texas courts and the United States Supreme Court.") (emphasis in original).

brain injury if he persisted in objecting to the trial court's decision to close discovery which he claims prevented him from deposing McClure's experts. Brown argues that, in the face of this "coercive" threat, he agreed to examine McClure's experts live at trial.

The record shows that after the trial court offered the parties the choice of proceeding to trial without further discovery or re-opening the discovery period to permit both parties to obtain the discovery each sought, Brown elected to move forward with the DME and examine McClure's experts live at trial.[9] Brown's counsel informed the trial court that if the court permitted Brown to take McClure's experts at trial, the discovery disputes would end:

> [Brown's counsel]: Judge, we'd like to do the DME and close discovery after the DME. Can we at least do that?
>
> [Brown's counsel]: We will take defendant's experts live at trial.
>
> [Brown's counsel]: We need to present our TBI case.
>
> [The Court]: I don't know. Can you?
>
> [Brown's counsel]: Yes.
>
> [The Court]: If I say okay to that, will this end all the discovery issues we have in this case?
>
> [Brown's counsel]: Yes.

---

[9] The pretrial hearing took place on October 31, 2018. Per the trial court's scheduling order, discovery had previously closed on October 1, 2018.

[McClure's counsel]: I don't have a problem with that if that's the way the Court wants to deal with this case.

[Brown's counsel]: We can take the witnesses live.

. . . .

[The Court]: This case will go to trial on December 3rd[10] at 9:00 a.m. Each side will have six hours to present their case. Six hours includes both direct and cross. If there's a need for any sort of pretrial, it will occur the week prior and it's my understanding—I'm going to have to have both sides agree to this—if this DME goes forward tomorrow, there are no other outstanding discovery issues that will have to be ruled on by this court or a discovery master in this matter. Is that correct?

[Brown's counsel]: Correct.

[McClure's counsel]: Yes.

Brown made no further objections. He likewise did not move for a continuance or other relief at the pretrial hearing, nor did he seek mandamus review or re-urge his motions to compel the expert deposition as grounds either for a trial continuance or a basis to re-open discovery. Consequently, Brown waived his ability to appeal the trial court's October 31, 2018 pretrial discovery rulings. *See Meyer v. Cathey*, 167 S.W.3d 327, 333 (Tex. 2005) ("[T]he failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct.") (quoting *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993)); *see also WWW.URBAN.INC. v.*

---

[10] The trial court reset the trial date from December 13.

14

*Drummond*, 508 S.W.3d 657, 678 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Graves v. Tomlinson*, 329 S.W.3d 128, 150 (Tex. App.— Houston [14th Dist.] 2010, pet. denied).

Even absent waiver, Brown failed to show the trial court abused its considerable discretion in its pretrial discovery rulings. Although Brown contends the trial court's ruling on October 31, 2018 amounted to *sua sponte* discovery death penalty sanctions against him, this argument ignores that, pursuant to the court's docket control order, the discovery period closed on October 1, 2018–thirty days before the parties' pretrial hearing on October 31, 2018. Thus, Brown's request to depose McClure's experts was in essence a request to modify the trial court's docket control order. Under Texas Rule of Civil Procedure 190.5, a trial court "may modify a discovery control plan at any time and must do so when the interest of justice requires." TEX. R. CIV. P. 190.5. We find nothing in the record showing the trial court abused its discretion in determining that no "interest of justice" existed requiring modification of the existing discovery control plan. Similarly, Rule 190.5 did not require the trial court to allow additional discovery. *See id.* ("[T]he court must allow additional discovery . . . related to new, amended or supplemental pleadings, or new information disclosed in a discovery response or in an amended or supplemental response" or "regarding matters that have changed materially after the discovery cutoff . . . .").

15

We also note that despite the trial court's ruling, per Brown's suggestion, Brown proceeded to examine McClure's experts live at trial. And Brown has not indicated what, if any, additional testimony he would have been able to elicit from the experts or present at trial for purposes of our review.[11]

We conclude the trial court did not abuse its discretion in its pretrial hearing discovery rulings. We overrule Brown's first issue.

## Summary Judgment

In his second issue, Brown contends the trial court erred when it granted summary judgment in favor of ECCL on his negligent entrustment and negligent supervision claims.[12]

---

[11] McClure presented four medical experts at trial: Drs. Rosenfield, Reynolds, Hershkowitz, and Boake. Brown deposed Dr. Rosenfield prior to trial and his trial testimony was presented via deposition excerpts. At trial, Brown's counsel cross-examined Drs. Boake and Reynolds and chose not to cross-examine Dr. Hershkowitz. Thus, Brown cannot complain on appeal about his inability to present further testimony as to Drs. Hershkowitz and Rosenfield. And as concerns Drs. Reynolds and Boake, Brown did not request additional time during the trial to examine the doctors nor does the record reflect what, if any, additional testimony Brown would have been able to present at trial had he been afforded the opportunity to depose those experts. Before trial, McClure timely disclosed the substance of these witnesses' mental impressions and opinions and the bases for them, along with any expert reports they prepared.

[12] Brown does not appeal the trial court's order granting summary judgment in favor of ECCL on Brown's vicarious liability and negligent hiring claims.

16

## A.    Standard of Review

We review a trial court's grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  When reviewing a summary judgment motion, we must (1) take as true all evidence favorable to the nonmovant and (2) indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).  If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any one of the grounds is meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In a traditional summary judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).  A defendant moving for traditional summary judgment must negate at least one essential element of the challenged cause of action or establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

In a no-evidence motion for summary judgment, the movant asserts no evidence supports an essential element of the nonmovant's claim on which the

17

nonmovant has the burden of proof at trial. *See* Tᴇx. R. Cɪv. P. 166a(i); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each challenged element. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn v. Love*, 321 S.W.3d 517, 524 (Tex. App.— Houston [1st Dist.] 2009, no pet.). Where, as here, a trial court grants a summary judgment involving both no-evidence and traditional grounds, we ordinarily address the no-evidence grounds first. *See PAS, Inc. v. Engel*, 350 S.W.3d 602, 607 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

## B.     Negligent Entrustment

To prevail on a negligent entrustment claim, a plaintiff must prove (1) the entrustment of a vehicle by the owner, (2) to an unlicensed, incompetent, or reckless driver, (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless, (4) that the driver was negligent on the occasion in question, and (5) the driver's negligence proximately caused the accident and plaintiff's injuries. *Goodyear Tire and Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007); *Ramirez v. Colonial Freight Warehouse Co., Inc.*, 434 S.W.3d 244, 253-54 (Tex. App.— Houston [1st Dist.] 2014, pet. denied). In its no-evidence motion, ECCL moved for summary judgment on elements two and three of Brown's negligent entrustment

18

claim. Brown therefore had the burden to present more than a scintilla of evidence to support these two elements.

In his summary judgment response and on appeal, Brown contends he presented more than a scintilla of evidence that McClure was an incompetent or reckless driver, and that ECCL knew or should have known that McClure was reckless or incompetent. In support of his argument, Brown points to McClure's driving record showing that McClure received speeding tickets in 2011 and 2013, and a ticket for making an improper turn in 2013. Brown also points to McClure's completion of two unspecified driving safety courses in 2005 and 2012.

In determining whether these tickets and driving safety courses create a fact issue as to whether McClure was an incompetent or reckless driver, we note the "important distinction between an operator who is 'incompetent or reckless' and one who is merely 'negligent.'" *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909–10 (Tex. 2016). Because negligent entrustment "requires a showing of more than just general negligence," it is not enough to show, for example, that a driver might have had a momentary lapse in judgment or otherwise acted negligently. *Id.* at 910–11.

In *Goodyear Tire and Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007), the Texas Supreme Court rendered a take-nothing summary judgment on an injured motorist's negligent entrustment claim. *See* 236 S.W.3d at 758. The Court held that

19

evidence showing the driver had received a speeding ticket while employed by the defendant coupled with evidence showing that in the three-year period before he was hired, the driver had been cited for driving without liability insurance and for rear-ending another car, was insufficient to raise a fact issue on recklessness or incompetence. *See id.*

Here, McClure's driving record—similar to the driver's record in *Mayes*—included one ticket for an improper turn, two speeding tickets, and two unspecified driving safety courses. Nothing in the record showed any prior accidents involving McClure or that he was otherwise careless or reckless to such an extent as to be unable to safely operate an automobile. *See Mejia-Rosa v. John Moore Servs, Inc.*, No. 01-17-00955-CV, 2019 WL 3330972, at *9 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.) (concluding evidence showing defendant received one citation for moving violation and one for rear-ending another car was insufficient to survive summary judgment); *Hous. Cab Co. v. Fields*, 249 S.W.3d 741, 746–47 (Tex. App.—Beaumont 2008, no pet.) (holding two convictions for driving without insurance, one citation for injury accident, and one license suspension for failure to carry insurance was legally insufficient to support jury's reckless or incompetent finding); *Nobbie v. Agency Rent-A-Car, Inc.*, 763 S.W.2d 590, 593 (Tex. App.—Corpus Christi 1988, writ denied) (holding two license

suspensions, one speeding ticket, and one citation for defective headlamp legally insufficient to support incompetence or recklessness finding).

We conclude Brown failed to raise a genuine issue of material fact over whether McClure was an incompetent or reckless driver. *See* TEX. R. CIV. P. 166a(i); *Lightning Oil*, 520 S.W.3d at 45. The trial court properly granted summary judgment on Brown's negligent entrustment claim.

## C.     Negligent Supervision

Brown contends the trial court erred in granting summary judgment in favor of ECCL on his negligent supervision claim because ECCL's summary judgment motion did not address the specific elements of that claim. ECCL responds it specifically challenged and defeated the duty element of Brown's negligent supervision claim. It further argues that even if the trial court erred in granting summary judgment on Brown's negligent supervision claim, reversal of the trial court's judgment is not required because a remand on this record would be futile.

To prevail on a claim for negligent supervision, a plaintiff must prove (1) the defendant owed him a legal duty to supervise its employees, (2) the employer breached the duty, and (3) the breach proximately caused the plaintiff's injuries.[13] *See Black v. Smith Protective Servs., Inc.*, No. 01-14-00969-CV, 2016 WL 5400565,

---

[13]     We note the Texas Supreme Court has not ruled definitively on the existence or elements of claims for negligent hiring, retention, supervision, or training. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010).

21

at *5 (Tex. App.—Houston [1st Dist.] Sept. 23, 2016, no pet.) (mem. op.); *Najera v. Recana Solutions, LLC*, No. 14-14-00332–CV, 2015 WL 4985085, at *7 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.); *Dangerfield v. Ormsby*, 264 S.W.3d 904, 913 (Tex. App.—Fort Worth 2008, no pet.); *Gaza v. L. Fisher Freight, Inc.*, No. 04-05-00510-CV, 2006 WL 2818070, at *1 (Tex. App.— San Antonio Oct. 4, 2006, no pet.) (mem. op.). Claims for negligent hiring, retention, and supervision are negligence causes of action based on an employer's direct negligence rather than on its vicarious liability. *See Mejia-Rosa*, 2019 WL 3330972, at *10.

A summary judgment motion "must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *Vertex Servs., LLC v. Oceanwide Hous., Inc.*, 583 S.W.3d 841, 852 (Tex. App.—Houston [1st Dist.] 2019, no pet.). A trial court can only grant summary judgment on the grounds addressed in the summary judgment motion. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("A judgment that grants more relief than a party is entitled to is subject to reversal…"). Unaddressed issues or claims cannot be a basis for summary judgment. *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983) (per curiam)).

In its motion, under both the no-evidence and traditional summary judgment headings, ECCL specifically addresses three of Brown's claims: respondeat superior, negligent entrustment, and negligent hiring. ECCL's motion does not address Brown's negligent supervision claim. Nonetheless, ECCL directs us to the portion of its traditional summary judgment motion addressing Brown's negligent hiring claim to argue that it challenged and defeated the duty element of Brown's negligent supervision claim as well. That portion of ECCL's motion states, in relevant part:

33. Texas Civil Practice & Remedies Code § 142.001, et seq. was designed to limit claims against employers for negligent hiring and supervision of employees. Under that statute, "[a] cause of action may not be brought against an employer, general contractor, premises owner, or other third party solely for negligently hiring or failing to adequately supervise an employee, based on evidence that the employee has been convicted of an offense." *Id.* at § 142.002.[14]

34. A cause of action for negligent hiring of an employee is only viable if:[15] (1) the employer knew or should have known of a conviction; and (2) the employee was convicted of: (A) an offense that was committed while performing duties substantially similar to those reasonably expected to be performed in the employment, or under conditions substantially similar to those reasonably expected to be encountered in the employment, (B) an offense listed in Article

___

[14] Section 142.002 is titled "Limitation on Liability for Hiring Employee Convicted of Offense."

[15] The exact language in Section 142.002 is not that a cause of action for negligent hiring is "only viable if," but rather that "this section does not preclude a cause of action for negligent hiring or the failure of an employer . . . to provide adequate supervision of an employee" if the listed elements are established. TEX. CIV. PRAC. & REM. CODE 142.002(b).

23

42A.054, Code of Criminal Procedure; or (C) a sexually violent offense. Id. at § 142.002(b). In other words, under the statute, in order to prevail on a claim for negligent hiring or supervision, Plaintiff must do far more than merely show that the applicable employee has previously been convicted of a criminal offense or offenses.

We do not read this general reference to Texas Civil Practice and Remedies Code Section 142.002 as a challenge to the duty element of Brown's negligent supervision claim. The mere fact that the statute addresses when a cause of action "for negligent hiring or the failure of an employer . . . to provide adequate supervision" may be precluded does not absolve ECCL of its burden to specify the elements upon which it sought to defeat Brown's negligent supervision claim.

We further note that in the last paragraph of its traditional summary judgment motion, ECCL expressly concludes: "As such, NextGen [ECCL] cannot be liable for negligent hiring as a matter of law, and summary judgment should be granted in its favor on this issue." There is no mention or express request for summary dismissal of Brown's negligent supervision claim. And while it may be true that some of the elements of negligent supervision and negligent hiring claims may overlap,[16] a trial court may not grant summary judgment on a claim not before it on a motion for summary judgment. We conclude that ECCL's traditional summary judgment motion did not place Brown's claim for negligent supervision before the trial

---

[16] That the trial court granted summary judgment on Brown's negligent hiring claim would not necessarily entitle McClure to summary judgment on Brown's negligent supervision claim.

24

court. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (stating trial court may not grant summary judgment on grounds not presented in motion); *Narnia Invs., Ltd. v. Harvestons Sec., Inc.*, No. 14-10-00244-CV, 2011 WL 3447611, at *5 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.) (holding trial court erred in granting summary judgment on claims not addressed in summary judgment motion because motion "neither conclusively disprove[d] any element" "nor challenge[d] the existence of any evidence of any element" of unmentioned claims).

ECCL also refers to Texas Civil Practice and Remedies Code Section 142.002 in its no-evidence motion under the section addressing Brown's negligent hiring claim. As noted, these general statements do not identify the elements of Brown's negligent supervision claim ECCL claims to have challenged and therefore do not satisfy the "specificity requirement" for a no-evidence motion. *See* TEX. R. CIV. P. 166a(i) (stating no-evidence summary judgment must state "elements as to which there is no evidence"); *see also Nnah v. 125 Interests, Inc.*, No. 14-15-00443-CV, 2016 WL 4543685, at *6 (Tex. App.—Houston [14th Dist.] Aug. 31, 2016, pet. denied) (concluding no-evidence motion that did not address breach of specific contract failed to seek judgment on that contract despite global statements that motion is directed to "all remaining causes of action" and that nonmovant had no support for "element numbers 1 through 6").

25

While we conclude the trial court erred in granting summary judgment on Brown's negligent supervision claim, we also conclude a remand on this issue would be improper and futile on the record before us. Even if Brown's claim survived summary judgment, submission of this additional theory of liability would not entitle Brown to any greater relief than what the jury already awarded him at trial. McClure conceded liability for the accident and the trial court directed a verdict in favor of Brown on this issue. Thus, the jury's verdict turned solely on its determination that Brown sustained only $1,000 in damages as a result of the accident—a finding Brown did not challenge either in the trial court or on appeal.[17] McClure tendered the full amount owed under the trial court's final judgment to Brown. Had the trial court denied summary judgment on Brown's negligent supervision claim, and had Brown submitted that additional theory of liability to the jury, it would have had no effect on the trial court's directed verdict in favor of Brown on McClure's liability,

---

[17] Brown did not challenge the legal or factual sufficiency of the evidence supporting the jury's finding that he sustained only $1,000 in damages as a result of the accident and has therefore waived any complaints as to the sufficiency of the evidence to support the jury's finding. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991) (holding challenge based on legal sufficiency of evidence supporting jury finding may be preserved for appeal by (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the charge; (4) a motion to disregard the finding; or (5) a motion for new trial, and factual sufficiency challenge on appeal requires party to have preserved challenge in trial court in motion for new trial). Consequently, Brown is not entitled to reversal of the trial court's judgment rendered on the jury's verdict or a new trial on this basis.

26

the submission of Brown's alleged personal injury damages, or the jury's verdict that Brown sustained only $1,000 in damages.

Brown asserts that, upon remand, the case would begin anew as of the date the trial court granted summary judgment in favor of EECL and he would have several more months to complete discovery and "amend [his] pleadings based on what [he] finds during discovery to include additional damage elements, which more likely than not will lead to additional damages other than what the jury awarded at trial." This assertion is incorrect. The only issue upon remand would be ECCL's joint and several liability, if any, for its alleged negligent supervision of McClure and the resulting damages the jury already found Brown sustained as a result of the accident, which damage findings Brown did not challenge and McClure already tendered to Brown.

"Erroneous rulings require reversal only if a review of the record reveals the error was harmful." *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 728 (Tex. 2016); *Nguyen v. Watts*, 605 S.W.3d 761, 791 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (quotation omitted). "The harmless error rule states that before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause 'the rendition of an improper judgment,' or that the error 'probably prevented the appellant from properly presenting the case

[on appeal].'"  *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (quoting TEX. R. APP. P. 44.1(a)).  The harmless error rule applies to all errors, including erroneously granting summary judgment or otherwise erroneously disposing of a claim.  *See id.* at 297–98; *see also Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (concluding any error committed by granting summary judgment on insurance bad-faith and extra-contractual claims was harmless because jury's finding in subsequent proceeding negated coverage, which was prerequisite for asserting bad-faith and extra-contractual claims).

Under these circumstances, we decline to remand Brown's negligent supervision claim to the trial court—despite the trial court's error—because doing so would be futile.[18]  *See, e.g., Wilson v. Tex. Parks and Wildlife Dept.*, 8 S.W.3d 634, 635 (Tex. 1999) (declining to remand issue regarding whether appellee controlled river conditions where no evidence of control was offered because remand "would be improper and, it appears, futile"); *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (declining to remand where doing so "would be futile and not in furtherance of judicial economy").  We hold the trial court's error in granting summary judgment on Brown's negligent supervision

---

[18]   Brown argues the cases cited by ECCL regarding futility are not applicable because they do not involve summary judgment review.  We are not aware of any authority—nor does Brown cite any—limiting an appellate court's authority to decline remand to a particular procedural posture.

claim was harmless. *See G & H Towing*, 347 S.W.3d at 297; *see also Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 82–83 (Tex. 2003) (concluding trial court's irregular procedure in directing verdict against attorneys was harmless because attorneys' action for tortious interference did not fail for lack of evidence but because proof of their claims would not have entitled them to the only damages they sought); *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 690 (Tex. App.—San Antonio 2012, no pet.) (holding trial court's grant of directed verdict and refusal to submit breach of implied warranty issue to jury where plaintiff submitted probative evidence raising fact issue, although error, was harmless because jury's proportionate responsibility findings barred plaintiff's recovery).

We overrule Brown's second issue.[19]

## Dr. Shore's Report

In his third issue, Brown contends the trial court abused its discretion when it excluded a two-page medical record from Dr. Shore because the record was admissible as a business record under Texas Rule of Civil Procedure 803(6) and constituted objective evidence that was both controlling on a material issue and not cumulative. He argues that exclusion of Dr. Shore's medical record caused the

---

[19]     Appellees also argue that negligent supervision remains an unrecognized tort in Texas. We need not address this issue in light of our disposition of Brown's second issue.

rendition of an improper judgment because proving Brown's traumatic brain injury turned on such record.[20]

ECCL asserts the trial court properly excluded Dr. Shore's two-page letter because (1) Dr. Shore was an untimely designated retained testifying expert, not a treating physician, (2) the letter was not a medical record, but rather an expert report, (3) even if exclusion of the report was error, it was harmless because it was cumulative of Brown's designated expert, Dr. Shelly Savant, who testified live at trial about the SPECT imaging, and (4) Brown waived his right to appeal exclusion of the report because he failed to show in an offer of proof what additional testimony he would have elicited from any witnesses based on the report.

We review a trial court's ruling on the admission or exclusion of evidence under an abuse of discretion standard. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000); *Owens–Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). To obtain reversal of a judgment based on error of the trial court in the exclusion of evidence, the challenging party must show that (1) the trial court did in fact commit error, and (2) the error was reasonably calculated to

---

[20]    In his brief, Brown does not identify what information the report contained or why the inability to present such information was harmful. He simply states, without more, that proving his traumatic brain injury "turned on Dr. Shore's medical records."

cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

Under the trial court's docket control order, Brown's deadline to designate expert witnesses was July 9, 2018. On September 20, 2018—more than two months after his expert designation deadline—Brown identified Dr. Shore as a treating physician in his Ninth Supplemental Responses to Defendants' Requests for Disclosure and produced Dr. Shore's two-page report. McClure moved to strike Dr. Shore as an untimely designated expert and exclude his report. According to McClure, Dr. Shore's report concerned his review of certain SPECT scan images of Brown's brain, which Brown's treating neurologist, Dr. Harpual Gill, had taken on June 8, 2018.

Dr. Shore's letter states that he "received a request" to review the SPECT scan images of Brown's brain but does not identify from whom he received the request. He also states in his letter that his opinions are based on "a reasonable degree of medical probability" but he then lists several caveats and opines that "possible neurological findings on this scan might be findings consistent with traumatic brain injury." Dr. Shore's report does not describe any treatment he provided to Brown. There is also nothing in the record showing that Dr. Shore did any independent

imaging; rather, the record shows that he reviewed and interpreted pre-existing images.[21]

The trial court held a hearing on McClure's motion on November 14, 2018. At the conclusion of the hearing, the trial court held that Dr. Shore's letter was an expert report, not a medical record, and excluded it as untimely. The trial court, however, admitted the underlying SPECT scan images and permitted Dr. Savant, Brown's expert, to testify live about them at trial.

Based on the record before us, we conclude the trial court did not abuse its discretion in concluding that Dr. Shore's report was an expert report, rather than a medical record, and excluding it as untimely. *See* TEX. R. CIV. P. 193.6 ("A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified" absent good cause).

We overrule Brown's third issue.

---

[21]     The record shows that the images referenced in Dr. Shore's report were ordered by Brown's treating neurologist, Dr. Harpual Gill, who previously interpreted them as showing normal findings.

## Conclusion

We affirm the trial court's order granting summary judgment to ECCL on all of Brown's claims and the trial court's final judgment.


                                Veronica Rivas-Molloy
                                Justice

Panel consists of Justices Goodman, Hightower, and Rivas-Molloy.